## Beach *versus* Parmeter.

1. The principle that a footman or horseman cannot compel a teamster who has a heavy load to turn out of the beaten track of the road, if there be sufficient room for the former to pass, is applicable to the case of a light wagon or carriage with a heavy draught.

2. The *accident* which will excuse the party who committed an injury is *inevitable accident,* such as human foresight could not have prevented, or an accident occasioned by the concurring negligence of both parties. But where an injury arises from the negligence of one party exclusively, he will not be free from liability by reason of the injury being accidental.

ERROR to the Common Pleas of *Tioga county.*

This was an appeal from the judgment of a justice of the peace, in an action by Isaac Beach *v.* Peter Parmeter and two others, for an injury done to his mare, in 1849, whilst passing on the public highway. The plaintiff had sent his son on an errand, and whilst riding on the mare he met the defendants in a buggy. The defendants continued in the road, and, whilst passing, the leg of the animal was struck and injured. It was said that the body of the mare, except the leg which was struck, was outside of the wagon track, on the foot path; and it was alleged that the defendants could have turned aside sufficiently to have avoided a collision. The mare was turned out on the side which was usual, and a log lay within eighteen inches of the wagon track on the side to which the mare was turned.

WHITE, President J., *inter alia,* charged "that a footman or equestrian has a right of way as well as the driver of a carriage or lumber wagon. The enjoyment of this right is regulated by reason. A footman or horseman cannot compel a teamster, who has a heavy draught, to leave the smooth beaten track of the road, if there is sufficient room to pass on either side. And where a road is narrow, or there is difficulty in passing, and it becomes impracticable or dangerous for the teamster to give part of the way, and the horseman can pass by riding out of the road, it is his duty to do so. If he refuses, and a collision ensues which occasions injury to his horse, it is attributable to his own negligence or obstinacy, and he is without remedy. So if the collision is entirely accidental, resulting from the vicious conduct of the animal which he rides, whether induced by fright or any other cause." He further observed, that if the injury was "the result of *accident*" no blame could attach to the defendants, and they could not be

[Beach v. Parmeter.]

held liable "to pay damages for an act which was not caused by them."

Verdict was rendered for the defendants.

The portions of the charge referred to were assigned as error.

*Cone*, for plaintiff in error.—The direction was calculated to mislead the jury by referring to the case of a road wagon with a heavy load, whereas the vehicle in question was a small wagon. The defendants were guilty of carelessness in running against the plaintiff's horse whilst the rider was endeavoring to get out of the road. The defendants might have stopped or turned out: 4 *Dana* 497, Payne *v.* Smith.

In the part of the charge last referred to, the Court assumed that the collision was not caused by the defendants. In the case of Payne *v.* Smith the collision was accidental, though resulting from the defendants' carelessness. Though a person is not liable *criminally* for an injury caused by accident, unless at the time he was acting unlawfully, yet he may be liable in a civil action.

The opinion of the Court was delivered by

WOODWARD, J.—It is not denied that the Court stated the law of the road correctly in regard to a teamster with a heavy draught; but as the defendants were driving a buggy, it is supposed this allusion to a teamster was calculated to mislead the jury. We think not. The illustration was fairly put, and it was not inapplicable to a buggy laden with three men and drawn by a single horse. In regard to such a buggy, no less than in reference to a teamster with heavy draught, the law unquestionably is that a footman or a horseman has no right to force it out of the beaten track of the road if there be sufficient room to pass on either side. And where a road is narrow, and there is difficulty in passing, if the horseman can turn out without danger to himself or beast, and the buggy cannot be turned out without incurring danger, it is the duty of the former to give way. This was the doctrine which the jury must have deduced from the charge, and in this there was no misleading.

When the Court said that if the injury complained of resulted from accident no blame could attach to the defendants, they must be understood to have meant *inevitable* accident—such as no human foresight could avert, or an accident occasioned by the concurring negligence of both parties. The whole tenor of the charge conveys this idea, and in such teaching there was no error. For inevitable accidents and for such as result from mutual negligence of parties, the law gives no redress, but when the injury comes from the exclusive negligence of one party, he cannot shield himself from liability by calling it an accident. Whether this in-

R 2

jury was the product of negligence, and whose that negligence was, were questions for the jury; and having been submitted to them, we have no power, if we had the inclination, to disturb their finding.

The judgment is affirmed.