## ALFRED HAWKSLEY *vs.* THOMAS PEACE.

### MARCH 22, 1916.

PRESENT: - Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1) Pleading. Case.. Trespass. Negligence.*

Where an injury is the effect of negligence, though the force be immediate or direct, the plaintiff may maintain case or trespass at his option. The form of action does not affect the rule as to liability, which is founded on negligence in both forms of action.

*(2) Trespass. Accidental Injuries from Firearms.*

To constitute a valid defence to an injury through the accidental discharge of a gun, while being handled by defendant, it must appear that the discharge was entirely without the fault of defendant and that it happened by accident unavoidable by him.

*(3) Accidental Shooting. Negligence. New Trial.*

There is an established standard of duty imposed upon those handling firearms and to excuse an injury it must appear that it was unavoidable, but this rule is of necessity a general one and accordingly in cases of accidental shooting the question of negligence is held to be primarily at least for the jury to determine by applying the rule to the facts as found by them. The trial judge is not concluded by the verdict in such cases, but his power to grant a new trial is the same as in the ordinary case where conflicting testimony requires its submission to a jury.

TRESPASS. Heard on exceptions of defendant and overruled.

BAKER, J. This is an action of trespass for assault and battery. The declaration contains two counts, the first of which alleges "that the defendant on to wit, the 7th day of

June, A. D. 1914, in Cranston, in said county," . . . "was then and there possessed of a gun loaded with gun powder and leaden bullets, which said gun, so loaded he, the defendant, then and there held at or towards the plaintiff, and then and there with force and arms with one of said bullets fired by him from said gun struck and wounded the plaintiff in his left leg." The second count charges assault and battery without specifying the manner.

To this the defendant pleaded not guilty and specially that "the shooting of said plaintiff was an accident unavoidable under the circumstances."

The case was tried before a court and jury in March, 1915, and the jury returned a verdict in favor of the defendant. Plaintiff duly filed a motion for new trial which, after a hearing thereon, was granted. To this decision exception was taken and the case is before this court on defendant's bill of exceptions which contains this single exception.

The evidence at the trial showed the shooting to have been accidental. The evidence was conflicting as to how it happened. There was testimony to the effect that the plaintiff with a companion was propelling a boat in a creek or pond and that the defendant, standing upon the bank about thirty feet away, shot at the boat and accidentally hit the plaintiff. The defendant's own account is that he was sitting on the bank with the loaded rifle at his side on the ground with its butt back of him; that he took hold of the barrel near the muzzle and drew the rifle forward on the ground with the intention of placing it across his knees and that in so doing it was discharged and the plaintiff was shot.

The initial subject of inquiry is as to the law which determines the civil liability for accidental injuries resulting from the use of firearms. This precise question has not been passed upon by this court. There is an abundance of authority, however, upon the question all substantially along one line. Passing the case in the year book, 21 Henry VII, 28 A., where one shot an arrow at a mark which glanced from it and struck another and it was held to be trespass, we come

to *Weaver* v. *Ward*, Hobart, 134, decided in 1607. Weaver brought an action of trespass for assault and battery against Ward. The defendant pleaded that he was, amongst others, by command of the Lords of the Council, in a certain band of soldiers, and so was the plaintiff; and that they were skirmishing with their muskets charged with powder against another band of soldiers, and as they were so skirmishing, the defendant *casualiter et per infortunium et contra voluntatem suam* in discharging his piece, did hurt and wound the plaintiff. Upon demurrer judgment was given for the plaintiff, for it was held that "no man shall be excused of a trespass . . . except it may be judged utterly without his fault; as if a man by force take my hand and strike you; or if here the defendant had said that the plaintiff ran across his piece when it was discharging; or had set forth the case with the circumstances so as it had appeared to the court that it had been inevitable and that the defendant had committed no negligence to give occasion to the hurt." So in *Underwood* v. *Hewson*, 1 Strange, 596 (1724), it appears that "the defendant was uncocking a gun and the plaintiff standing to see it, it went off and wounded him and at the trial it was held that the plaintiff might maintain trespass."

These two cases, particularly *Weaver* v. *Ward*, have been cited with approval in numerous American reported cases relative to injuries arising from the accidental discharge of firearms, in which essentially the same rule as to liability has been recognized. For example, in *Tally* v. *Ayres*, 35 Tenn. (3 Sneed) 677, while the defendant was in the act of placing a loaded gun upon his arm or shoulder, from some cause unexplained in the proof, the gun was discharged, killing plaintiff's mare standing nearby hitched to a post. In upholding a verdict for the plaintiff the court said: "To constitute an available defence in such cases, it must appear that the injury was unavoidable, or the result of some superior agency without the imputation of any degree of fault to the defendant." In *Judd* v. *Ballard*, 66 Vt. 668, plaintiff and

defendant were riding at the rear end of a large express wagon, partly lying down facing each other. While in this position the defendant drew out his revolver and discharged it over the wheel of the wagon, after which in some manner while the revolver was still in his hands, it was discharged, the ball taking effect in the plaintiff's knee. There was a verdict for the plaintiff. The court upheld it saying: "The shooting of the plaintiff was an accident, but in no sense an unavoidable accident. It would not have occurred but for the defendant's carelessness. The test of liability is not whether the injury was accidentally inflicted, but whether the defendant was free from blame." In *Atchison* v. *Dullam*, 16 Ill. App. 42, the defendant had a double barrelled breach loading shot gun; one barrel had been discharged. While the defendant was attempting to insert a fresh cartridge, the other barrel went off and severely injured the plaintiff. In sustaining the verdict for the plaintiff the court said, citing among others three of the above cases: "They determine that if a person is injured by the discharge of a gun in the hands of another, who has entire control of it, the burden is cast upon the latter to prove that the gun was not fired at him either intentionally or negligently, but the result was inevitable and without the least fault on his part." In Thompson on Negligence, Vol. 1, Sec. 787, the author says: "It has been held on very clear reasoning, that the accidental discharge of a gun in the hands of a person, whereby damage is inflicted upon another, is of itself *presumptive evidence of negligence* sufficient to take the question to a jury. When it is considered that, to constitute a valid defence in such cases, it must appear that the injury was unavoidable, or the result of some superior agency without the imputation of any degree of fault upon the person carrying the dangerous weapon; when it is further considered that the injury is one which does not ordinarily happen where reasonable care is taken to avert it,—the propriety of this conclusion must be obvious." See, also, *Morgan* v. *Cox*, 22 Mo. 373; *Vincent* v. *Stinehour*, 7 Vt. 62; *Wright* v.

*Clark*, 50 Vt. 130; *Knott* v. *Wagner*, 84 Tenn. (16 Lea), 481; *Bullock* v. *Babcock*, 3 Wend. 391; *Hankins* v. *Watkins*, 77 Hun. 360; *Beach* v. *Parmeter*, 23 Pa. 196; *Jennings* v. *Fundeburg*, 4 McCord, * p. 161 · (S. C.); *Morris* v. *Platt*, 32 Conn. 75; *Welch* v. *Durand*, 36 Conn. 182; *Bahel* v. *Manning*, 112 Mich. 24; *McCleary* v. *Frantz*, 160 Pa. St. 535; *Winans* v. *Randolph*, 169 Pa. St. 606; *Glueck* v. *Scheld*, 125 Cal. 288; *Seltzer* v. *Saxton*, 71 Ill. App. 229; *Gilmore* v. *Fuller*, 99 Ill. App. 272; *Rudd* v. *Byrnes*, 156 Cal. 636; *Manning* v. *Jones*, 95 Ark. 359; *Sutton* v. *Bonnett*, 114 Ind. 243; *Chataigne* v. *Bergeron*, 10 La. Ann. 699; *Harper* v. *Holcomb*, 130 N. W. 1128 (Wis.); *State* v. *Cunningham*, 65 So. 115 (Miss.); *Annear* v. *Swartz*, 57 L. R. A. N. S. 1915 E. 267 (Okla.); Ad. Torts (Am. Ed.), 1878, Vol. 1, 568; Shear. & Red. Neg., 4th ed. Vol. 2, Sec. 686; Thomp. Neg. Vol. 1, §§ 779, 780; 12 Am. & Eng. Ency. L. 519; 40 Cyc. 872.

The question has sometimes arisen as to the appropriate action in cases of this kind, whether it should be trespass or case. The early actions were generally brought in trespass. Examination will show that as to the American cases at present in some of the older states, whose practice may be said to follow the common law, the action of trespass is preferably employed; while in the newer states and in others which have adopted codes, actions for damages for injuries resulting from accident by shooting are now generally in case. *Brennan* v. *Carpenter*, 1 R. I. 474, was an action for trespass on the case for an injury to the plaintiff's horse and chaise, hitched in a public street, caused by the defendant negligently driving his team against them. After a verdict for the plaintiff the defendant moved to set aside the verdict on the ground of the refusal of the trial court to charge the jury that if they found the injury was the immediate effect of defendant's act of force he was not liable in an action of (1) trespass on the case and the jury should bring in a verdict of not guilty. From the authorities the court deduced these rules, namely: "1st. Where the injury complained of is the effect of negligence, though the force be immediate or direct,

the plaintiff may maintain his action of trespass on the case or trespass at his option. 2d. But where the injury is the effect of force direct and intentional the action must be trespass and not case." As the evidence in that case showed that the injury was unintentional the verdict was upheld. The question of the form of action in a case like the one now under consideration is therefore of no importance in this State.

It is also generally held that the form of action does not affect the rule as to liability. In *Atchison* v. *Dullam, supra,* on page 44 the court says: "But whether the liability of the defendant is sought to be enforced in an action of trespass or in an action on the case can make no particular difference as the rule of law upon which the defendant's liability is to be established is the same in either form of action."

In *Morgan* v. *Cox, supra,* the action was of the nature of case. The court, after commenting on the rule of liability in trespass, on page 377, says: "The change that has been introduced by the new code in the remedy, has not changed the rules of law as to the liability of the parties." The reason of this is that the liability is founded on negligence in both forms of action. This is well stated on page 87 in *Morris* v. *Platt, supra* (which was a case of shooting) as follows: "We have seen that if the injury had been consequential and the form of action case, the defendant would not have been liable, and the question returns whether he can and should be holden liable because the injury was direct and immediate and the form of action is trespass. I think not, whether the decision of the question be made upon principle or governed by authority." . . . "The *foundation* of that liability in every case of accident where it is the result of human agency uninfluenced by the operations of nature and the act is lawful, is really *negligence.* This is true of collisions between vessels on the water, or horses or vehicles and persons upon the land, which constitute the largest class of cases." . . . "So when a man in firing at a mark unintentionally wounds another, the injury is

direct and the form of action is trespass, but the ground of liability is negligence in doing an unnecessary and avoidable though lawful act, without the extraordinary degree of care which the law demands in such circumstances and which would have prevented the accident. As therefore the foundation of the liability is the same in both cases, irrespective and independent of the question whether the injury was direct or consequential, there is no reason for any distinction in respect to the justification in the two actions." See, also, *Stanley* v. *Powell,* 1 L. R. Q. B. 86 (1891), where after a careful consideration of the English cases it is held that in a case of accidental shooting neither case nor trespass could be maintained unless the injury were the result of negligence.

In *Weaver* v. *Ward, supra,* negligence is clearly recognized as the rule of liability when it is said that no man shall be excused "except it may be judged utterly without his fault." Illustrating how a defendant might successfully excuse his act, it mentions among other things that he might set forth the case with circumstances so as it had appeared to the court that it had been "inevitable." This word has been used in some of the reported cases of accidental shooting above cited in stating the degree of care to be exercised. It appears in the citation from *Atchison* v. *Dullam, supra.* Of course an inevitable accident furnishes a good defence, but we do not think it is true that in order to constitute a defence in a case of accidental shooting it is necessary to show that the act was *inevitable* if that word is to be taken in its strictest sense. It is ordinarily a more emphatic and stronger word than its synonym "unavoidable," which we think is the more satisfactory word for use in stating the rule of liability in these cases. See the discussion as to the use of the word "inevitable" in *Stanley* v. *Powell, supra.*

(2) In concluding this discussion of the law governing the civil liability for accidental injuries resulting from the use of firearms as applicable to the present case, inasmuch as it is admitted that the plaintiff was injured by the discharge of a

gun while it was being handled by the defendant, it was incumbent upon the latter, in order to excuse himself from liability for the injury, to show that the discharge was entirely without his fault and that it happened by accident unavoidable by him.

One other point raised by the defendant remains for consideration. Ordinarily whether or not the person causing such an injury used the care required of him in the circumstances is a question for a jury. Thomp. Neg. Vol. 1, Sec. 780. See *McCleary* v. *Frantz, supra,* and *Moebus* v. *Becker,* 46 N. J. L. 41. These two cases and the one following are cited on defendant's brief. In *Winans* v. *Randolph, supra,* which was a case of accidental shooting, there was a verdict for the plaintiff. In its opinion affirming the judgment below, the court said: "Where the standard of duty is not fixed, but varies with the circumstances as developed by the testimony, the question of negligence is for the jury. No fixed standard could be applied to the facts of this case." There is a similar statement in *McCleary* v. *Frantz, supra,* in which a verdict for the plaintiff was upheld and which was before the court on exceptions of defendant to his request to charge, certain of which asked for the direction of a verdict in his favor on account of plaintiff's contributory negligence. The defendant in the present case claiming that it is a case in which the standard of duty is not fixed by law, says in his brief: "Being a case in which the jury itself had to frame a measure of care to be exercised by defendant and fix a standard of duty to be regarded by defendant, and then compare the actual conduct of defendant with such measure or standard fixed by itself, the conclusion of the jury is conclusive and not to be disturbed by the trial justice." This statement is in effect that in such case on a motion for a new trial, although the trial judge may be of opinion that "the jury . . . failed to respond truly to the real merits of the controversy" and "that the verdict fails to administer substantial justice" he is without power to disturb the verdict. There is, of course, no merit in such a claim.

We think the statement in *Winans* v. *Randolph* that in cases of this kind "the standard of duty is not fixed, but varies with the circumstances" is inapt and misleading. As has already been shown, there is an established standard of duty imposed upon those handling firearms. To excuse an injury caused by one handling them it must appear that the injury was unavoidable by him. The rule is of necessity a general one. An attempt to fashion rules of conduct for all possible future emergencies would be futile. Human foresight cannot provide by a specific rule how individuals are to conduct themselves in order to escape liability in the almost infinite variety of conditions and circumstances under which accidents caused by them may occur. Accordingly in cases of accidental shooting the question of negligence is held to be primarily at least for the jury to determine by applying said rule to the facts as found by them, in their consideration of the testimony. The same thing is true in most cases of every kind whatsoever brought for the recovery of damages for injuries claimed to result from negligence. It is not clear that *McCleary* v. *Frantz* and *Winans* v. *Randolph* go beyond this. In *Moebus* v. *Becker, supra,* the plaintiff requested the court to charge the jury that if they believed from the evidence that certain facts were established the defendant was guilty of negligence. The court refused to so charge. An exception was taken and there was a verdict for the defendant. The Court of Review said: "On this writ of error which presents only the exception taken to the refusal of the court to charge as requested, the case is not in a position to decide the propriety of the verdict which the jury have found. The plaintiff puts himself on the single ground that it was not a proper case for the jury and that the court erred in submitting it to them." While it was held to be a proper case to be submitted to a jury, the opinion clearly implies that the propriety of the verdict rendered could have been challenged and therefore that it was not necessarily conclusive.

So far as the power of a trial judge to grant a new trial after verdict in cases like the one at bar is concerned, it must be held to be the same as in the ordinary case where conflicting testimony requires its submission to a jury. He is not concluded by the verdict in either case. His power and duty as to acting on a motion for new trial in a case like the one at bar are the same as is set forth in the opinions in *Wilcox* v. *R. I. Co.*, 29 R. I., 292; *Noland* v. *R. I. Co.*, 30 R. I. 246, and *McMahon* v. *R. I. Co.*, 32 R. I. 237.

.Was the action of the trial judge in granting a new trial error ? The grounds of his decision do not appear in the record. But upon reading all of the reported testimony we are not prepared to say that he was clearly in error, even if the defendant's account of the accident were accepted as true. Accordingly defendant's exception is overruled and the case is remitted to the Superior Court for a new trial.

*Irving Champlin, Malcolm D. Champlin,* for plaintiff.
*Sullivan & Sullivan, John J. Sullivan,* for defendant.